**DELAWARE VALLEY CITIZENS' COUNCIL FOR CLEAN AIR, et al.**

v.

**COMMONWEALTH OF PA., et al.**
**UNITED STATES of America**

v.

**COMMONWEALTH OF PA., et al.**

**No. 82–1104**

United States Court of Appeals, Third Circuit.

April 6, 1982.

Present ADAMS, GIBBONS, HUNTER, WEIS, GARTH, SLOVITER and BECKER, Circuit Judges.

SUR PETITION FOR REHEARING

ADAMS, Circuit Judge.

The petition for rehearing filed by Delaware Valley Citizens' Council for Clean Air in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Tr. of Oral Argument at 21 22 (emphasis added).

STATEMENT OF JUDGE ADAMS SUR
DENIAL OF PETITION FOR
RECONSIDERATION

On March 19, 1982, over Judge Garth's dissent, a panel of this Court granted the Commonwealth of Pennsylvania's motion for a stay until this matter might be considered by the merits panel, and listed the case for expedited disposition on the merits on May 13, 1982. Appellees now have petitioned this Court to reconsider its decision to grant a stay.

In our order of March 19, we expressed "grave concern regarding the failure of the General Assembly of Pennsylvania to enact legislation to implement the Consent Decree ... entered into a number of years ago and which in turn was utilized to obtain substantial funds from the Federal Government." That failure on the part of the General Assembly may well mean that the Commonwealth will not succeed before the merits panel. Nonetheless, in view of the overriding public interest in maintaining the flow of sorely needed federal highway funds to the Commonwealth, and in view of the fact that we had been advised that a significant number of highway construction jobs would be lost as a result of the failure to grant a stay, we believed it appropriate to permit these important projects—affecting thousands of citizens—to proceed for a very short period pending consideration of the matter by the merits panel, which, of course, would have the advantage of full briefing. Only in this way could we avoid subjecting "innocent" third parties—citizens of Pennsylvania—to unnecessary and perhaps irreparable hardship. *See Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978). Moreover, we did not believe that the grant of a stay under these circumstances would derogate the authority of the district judge any more than stays ordinarily do.

In his statement, Judge Garth concludes that the Commonwealth cannot "sustain its position on irreparable injury because ... the legislature has within its power the ability to discharge the imposed sanction." At 989. While that is concededly true, it is not, in my view, relevant to the issue of irreparable harm. In fact, the question whether the legislature can persist in pursuing its chosen course—without subjecting Pennsylvania to the sanction imposed by the district judge—is one of the very issues to be resolved by the merits panel several weeks from today.

Accordingly, I vote to deny the petition for rehearing en banc.

Circuit Judge JAMES HUNTER, III, joins in this statement.

GARTH, Circuit Judge, dissenting from denial of rehearing en banc.

On January 22, 1982, the U. S. District Court for the Eastern District of Pennsylvania held the Commonwealth of Pennsylvania and the Secretaries of the Pennsylvania Departments of Transportation and Environmental Resources in civil contempt for failing to implement the automobile emissions inspection/maintenance (I/M) program mandated by the August 29, 1978 Consent Decree signed by the Commonwealth and the plaintiffs, Delaware Valley Citizens' Council for Clean Air and the United States. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pa.*, 674 F.2d 976 (3d Cir. 1982). Implementation of the I/M program ceased after the Pennsylvania legislature, over the Governor's veto, passed House Bill No. 456 on October 5, 1981. That bill prohibits any department or agency of the executive branch of the state government from spending any public funds for the establishment and administration of an I/M program.

As the sanction for the contempt, the district court decreed that the Secretary of the U. S. Department of Transportation shall not approve any projects, or award any grants, under the federal highway aid programs in the Philadelphia or Pittsburgh areas that are covered by the Consent Decree, other than for safety, mass transit, or transportation improvement projects related to air quality improvement or mainte-

nance. The district court, on February 18, 1982, refused to stay its order pending appeal. The Commonwealth, supported by various *amici*, then sought such a stay from a panel of this court. On March 19, 1982, the panel granted the stay. I dissented from that ruling.

I dissented from the order which granted the stay because I believed then, as I do now, that the sanction imposed by the district court is clearly related to compelling the Commonwealth's compliance with the Consent Decree; that the responsibility for any failure of the Commonwealth to receive federal highway funds and the consequences thereof, belongs to the Pennsylvania legislature, which has the immediate ability to cure the contempt; and that the district court has not improperly nor unconstitutionally intruded into the Commonwealth's province.

With recognition of the fact that it was a *consent* decree into which the Commonwealth entered on August 29, 1978, and recognizing the Commonwealth's history of reluctance to comply with that decree despite numerous extensions of time and opportunities granted to do so, I conclude that the district court judge did not abuse his discretion in denying the stay. In my opinion, the Commonwealth cannot show a likelihood of success when the merits of its appeal are addressed. *See O'Brien v. Brown*, 409 U.S. 1, 3, 92 S.Ct. 2718, 2719, 34 L.Ed.2d 1 (1972) (per curiam). Nor can the Commonwealth, in my view, sustain its position on irreparable injury because, as I have noted, the legislature has within its power the ability to discharge the imposed sanction. It can do so by permitting state funds to be expended to implement the decree by which the Commonwealth, and thus the legislature, is already bound. By such an act, all federal highway funds could immediately be freed. Finally, there is no countervailing interest which would sustain the legislature's action when balanced against the public interest in having both the federal highway funds available and the benefits from implementation of the Consent Decree's environmental protections. Thus, on all counts, when tested by the established standard for the granting of a stay, the Commonwealth has failed to carry its burden. *See Beverly v. United States*, 468 F.2d 732, 740–41 n.13 (5th Cir. 1972).

In addition, there is the distinct possibility, noted in Delaware Valley's petition for rehearing, that while the stay remains in effect pending appeal, the Commonwealth may receive all or part of the $300 million in highway funds that are the subject of the district court's order. Such a development would deprive the district court and this court of an effective sanction if the district court's order is ultimately upheld— as I have predicted it will be—by the merits panel. That this is not a fictitious, but rather a real possibility is suggested by the argument made by the United States when we considered the Commonwealth's stay motion. At that time, the United States sought a remand to the district court so that its sanction could be modified to permit the federal government to provide the Commonwealth with funds for *all* interstate highway projects. The United States expressed no desire to withhold these funds in order to compel the Commonwealth's compliance with the environmental standards embodied in the Consent Decree.

I do not believe that the Commonwealth should be permitted to flout orders of the United States District Court with impunity. The Governor of Pennsylvania, in vetoing House Bill 456, which prohibited the Commonwealth from funding the implementation of the Consent Decree, had foreseen this very sanction and had warned the legislature that federal highway funds might well be cut off if the bill were passed. The Pennsylvania legislature, in the face of this warning, nevertheless chose to override his veto and chance the dire consequences to the Commonwealth and its citizens that it now blames on the district court. While I firmly believe that federal courts should not interfere with matters that are purely state prerogatives, *see Halderman v. Pennhurst State School & Hosp.*, 673 F.2d 647, at 662–71 (3d Cir. 1982) (en banc) (Garth, J., concurring in part and dissenting as to relief); *Rennie v. Klein*, 653 F.2d 836 (3d Cir. 1981)

(en banc), this case involves substantially different interests and considerations.

By permitting this stay of the district court's sanction, the action of the legislature in ignoring its obligations under law will be rewarded, its violations of the Consent Decree will be condoned, and the legislature will be emboldened to persist in its contumacious conduct. The efforts of the district court to enforce compliance with its decree will thereby be thwarted. I would therefore grant Delaware Valley's petition for rehearing and would deny any stay of the district court's order except that I would permit a stay solely to enable the United States Government to provide funds for the Commonwealth in the event of emergencies.