DELAWARE VALLEY CITIZENS' COUNCIL FOR CLEAN AIR, et al., American Lung Association of Philadelphia, and Montgomery County, Delchester Lung Association, Sierra Club, Pennsylvania Chapter Friends of the Earth of the Delaware Valley, Citizens' Committee For Environmental Control, Quinn, Kevin, Farrell, Kaysi, Weiss, Ruth G. Klinkner, John, Biez, Elizabeth S., Shulman, Mona

v.

COMMONWEALTH OF PA., & Train, Russell, E., Ind. & as Administrator of the Environmental Protection Agency, et al., Sherlock, William T., Individually and as Secretary of the PA Dept. of Transportation, Goddard, Maurice K., Individually and as Secretary of the PA Dept. of Environmental Resources, Snyder, Daniel J., III, Individually and as Regional Administrator of the Environmental Protection Agency, Region III.

UNITED STATES of America

v.

COMMONWEALTH OF PENNSYLVANIA; The Pennsylvania Department of Transportation and William T. Sherlock, Secretary of the Pennsylvania Department of Transportation; the Pennsylvania Department of Environmental Resources and Maurice K. Goddard, Secretary of the Pennsylvania Department of Environmental Resources.

Appeal of COMMONWEALTH OF PENNSYLVANIA, Secretary of Pennsylvania Department of Transportation and Secretary of Pennsylvania Department of Environmental Resources.

No. 84–1332.

United States Court of Appeals, Third Circuit.

Argued Dec. 6, 1984.

Decided Feb. 11, 1985.

Stern, District Judge, sitting by designation, filed concurring opinion.

F. Henry Habicht, II, Asst. Atty. Gen., Jacques B. Gelin, Maria A. Iizuka (argued), Dept. of Justice, Washington, D.C., for appellee U.S.

Jerome Balter (argued), Public Interest Law Center of Philadelphia, Philadelphia, Pa., for appellee Delaware Valley Citizens' Council.

John M. Hrubovcak (argued), Asst. Counsel, Spencer A. Manthorpe, Chief Counsel, Com. of Pa., Dept. of Transp., Harrisburg, Pa., for appellant Com. of Pa.

Before ALDISERT, Chief Judge, BECKER, Circuit Judge, and STERN, District Judge.*

## OPINION OF THE COURT

ALDISERT, Chief Judge.

The Commonwealth of Pennsylvania finds itself between a rock and a hard place. A consent decree entered in August 1978 by the federal court commands it to implement a vehicle emission inspection and maintenance program. At the same time, its own state court system by an order dated January 9, 1984, enjoins it from carrying out the federal decree. The January Pennsylvania court order implemented a decision by that state's supreme court determining that the parties to the federal consent decree lacked the authority to consent to establishing and implementing an auto emissions inspection program and ordered that "an injunction should issue enjoining [the state] from performing the terms and conditions of the consent decree." *Scanlon v. Commonwealth of Pennsylvania*, 502 Pa. 577, 590, 467 A.2d 1108, 1115 (1983).

■ Bearing such formidable instructions from its own court system, the Commonwealth applied for relief in the district court under motions pursuant to Rule 60(b), Federal Rules of Civil Procedure, to

* Honorable Herbert J. Stern of the United States District Court for the District of New Jersey, sitting by designation.

vacate the 1978 consent decree.[1] The district court refused relief, and this appeal followed. We affirm.[2]

## I.

Although our court is no stranger to this marathon litigation, see 674 F.2d 970 (3d Cir.), cert. denied, 458 U.S. 1125, 103 S.Ct. 14, 73 L.Ed.2d 1400 (1982), 674 F.2d 976 (3d Cir.), cert. denied, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982), 674 F.2d 987 (3rd Cir.1982), 678 F.2d 470 (3d Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982), a brief chronology of the critical events surrounding the procedural history is necessary. The Delaware Valley Citizens' Council for Clean Air and others (Delaware Valley) and the United States separately sought a mandatory injunction in the federal courts to require Pennsylvania to implement a vehicle emission and maintenance program. Pennsylvania had failed to implement such a program as required by the federal Environmental Protection Agency (EPA). In August 1978 the Commonwealth parties entered into a consent decree with Delaware Valley and the United States obligating Pennsylvania to seek state legislation to establish a franchise inspection and maintenance system wherein the state would award contracts to individual persons to carry out the inspection function. The decree provided that if the necessary legislation were not enacted, the Pennsylvania Department of Transportation (PennDot) would, under its own authority, establish a private garage inspection and maintenance system whereby the Commonwealth would certify private facilities to perform the inspections. Pennsylvania's General Assembly did not so act and PennDot proceeded under the second alternative to establish a private garage system.

In April and June, 1980, various Pennsylvania state legislators petitioned in the district court to intervene, arguing that their rights as legislators were being usurped by the enforcement of the consent decree. The district court denied intervention. On appeal, this court affirmed, 674 F.2d 970 (3d Cir.1982), determining that the proposed intervenors were not entitled to intervene as a matter of right under Rule 24(a)(1), Federal Rules of Civil Procedure, because the proposed intervenors failed to demonstrate that their interests were not adequately represented, and that the district court did not abuse its discretion in denying permissive intervention because of the untimeliness of the intervention petitions. The legislators' petition for certiorari was denied. 458 U.S. 1125, 103 S.Ct. 14, 73 L.Ed.2d 1400 (1982).

In April 1981, Pennsylvania moved to modify the consent decree, seeking both an extension of time for implementation and a stay of the existing implementation order. The district court denied the motions and found that the Commonwealth was in violation of the consent decree. On appeal we affirmed, 674 F.2d 976 (3d Cir.), cert. denied, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982). In June 1981, the Pennsylvania legislature enacted H.B. 456, 71 Pa.Stat.Ann. § 523 (1981), which prohibited the expenditure of any funds for an emission inspection and maintenance program. In August 1981, various Pennsylvania state legislators filed actions in the state court seeking a declaratory judgment that the Pennsylvania parties lacked authority to enter into the federal court consent decree. In October 1981, Pennsylva-

---

1. Rule 60(b) provides in relevant part:

 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective applica-

tion; or (6) any other reason justifying relief from the operation of the judgment.

2. The Commonwealth's Notice of Appeal indicates that appellants also appeal from the district court's order of April 26, 1984 appointing a special master pursuant to Rule 53(b), F.R. Civ.P. This issue, however, was not addressed in appellants' brief, reply brief or at oral argument. Accordingly, we hold that appellants have waived this issue on appeal.

nia moved to modify the consent order in light of H.B. 456 and Delaware Valley moved to have the Pennsylvania parties declared in civil contempt and requested sanctions.

In January 1982, the district court denied Pennsylvania's motion to modify and found the Commonwealth, the Secretary of PennDot, and the Secretary of the Pennsylvania Department of Environmental Resources in civil contempt. As a sanction, the court ordered the Secretary of the United States Department of Transportation to refrain from approving any projects or awarding any grants for highways in areas in the Commonwealth covered by the consent decree other than for the purposes of safety, mass transit, or transportation projects related to air quality improvement or maintenance. On March 5, 1982, the EPA proposed to withhold Clean Air Act funds—approximately $700,000—from PennDot and the Pennsylvania Department of Environmental Resources. The district court orders were affirmed by this court. 678 F.2d 470 (3d Cir.1982). In affirming the district court, we asserted that the Commonwealth "itself was and remains bound by the consent decree," noting that the Pennsylvania Department of Justice, members of which were signatories of this decree, has the exclusive power to compromise and settle lawsuits against the Commonwealth. *Id.* at 475. Again the Supreme Court denied a petition for certiorari. 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

In May 1983, the Pennsylvania legislature enacted Act 3 of 1983, 75 Pa.Cons. Stat.Ann. § 4706(b) (1983), which created an exception to H.B. 456, and permitted the establishment of an emission inspection and maintenance program when required by federal law and when necessary to avoid the loss of federal funds. Following enactment of this statute, the district court lifted the January sanctions.

In October 1983, the Pennsylvania Supreme Court held that the state officials had no authority to enter into the federal consent decree in 1978, ruled that the federal decree was "a nullity," 502 Pa. at 590,

467 A.2d at 1115, and remanded the case to its Commonwealth Court which, in January 1984, enjoined PennDot from respecting the terms of the federal decree. In March 1984, the Commonwealth asked the district court to vacate the 1978 consent decree under motions brought under Rule 60(b)(5) and (6). The district court denied the motions in April 1984. This appeal followed.

## II.

■ We review the district court actions involved here under an abuse of discretion standard. *United States Steel Corp. v. Fraternal Association of Steelhaulers*, 601 F.2d 1269, 1274 (3d Cir.1979). Understandably, the Commonwealth appellants contend that the district court abused its discretion in refusing to open the consent decree, arguing that *Scanlon v. Commonwealth of Pennsylvania*, 502 Pa. 577, 467 A.2d 1108 (1983), compelled the district court to vacate the consent decree. Informed by its own court system that the federal consent decree was "a nullity," it asked to be relieved from the discomfort of being ordered by the federal court system to obey an injunction and ordered by its own state court system to ignore it. Because of the obvious comity sensitivities present, we are in the unfortunate position of analyzing a decision of the highest court of a sovereignty that in turn had analyzed a federal case and made a determination that the federal decree was null and void.

But it is not necessary for courts of two separate sovereignties to get into a " 'tis! t'ain't!" colloquy on the merits of this dispute. Rather, the resolution of this particular dispute turns on the efficacy of final judgments rendered by the federal court system.

■ This is not a diversity case in which the controlling legal precepts are found in the body of state substantive law. The consolidated cases were filed in the federal district court under the federal Clean Air Act, as amended, 42 U.S.C. §§ 7401–7642, which requires each state to submit a state implementation plan for the attainment and maintenance of national ambient air quality

standards for each air quality control region in the state. After the state failed to implement the emission inspection and maintenance program, the Delaware Valley group instituted a citizens' action on June 29, 1976, pursuant to 42 U.S.C. § 7604, against the Commonwealth of Pennsylvania, the Secretary of the PennDot, the Secretary of the Pennsylvania Department of Environmental Resources, and the administrator and regional administrator of the Environmental Protection Agency. The plaintiffs requested an order to enforce the Pennsylvania state implementation plan requirement for the implementation of the program in the Philadelphia and Pittsburgh areas. After the EPA issued notices of violation to the Governor of Pennsylvania and the Secretary of PennDot, on February 18, 1977, the United States instituted its own suit against the Commonwealth of Pennsylvania and certain of its departments and officers pursuant to 42 U.S.C. § 7413(b) to enforce the Pennsylvania implementation plan. Clearly the federal courts had federal question jurisdiction. It is equally clear that what was attacked collaterally in the state court system was a final federal court judgment and that the dispute implicated federal law.

■ Much of the Pennsylvania Supreme Court's rationale for its holding that the federal decree was a nullity stems from its conclusion that the Commonwealth could not be bound where the consent decree was signed only by the "counsel for Pennsylvania Department of Transportation" and "counsel for Pennsylvania Department of Environmental Resources." This appears to be a collateral attack on this court's prior holding in *Delaware Valley Citizens' Council for Clean Air vs. Commonwealth of Pennsylvania*, 678 F.2d 470, where we had the precise issue before us. We determined that

the Commonwealth itself was and remains bound by the consent decree.... By its terms "[t]he provisions of this Consent Decree apply to the Defendants Commonwealth of Pennsylvania, ... and to each of the officers, agents, employees and successors of said parties." This Court has previously noted that the Pennsylvania Department of Justice, members of which were signatories of this decree, has the exclusive power to compromise and settle law suits against the Commonwealth.... And in this case, we have also recently noted that the Attorney General, who heads the Department of Justice, has represented the Commonwealth in this litigation from the time the complaint was filed, through the negotiation and signing of the consent decree, and up to the present.

678 F.2d at 475 (citations omitted). *See also Vecchione v. Wohlgemuth*, 426 F.Supp. 1297 (E.D.Pa.), *aff'd* 558 F.2d 150 (3d Cir.), *cert. denied*, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977).[3] It scarcely need be reiterated here that the relief from a decision of this court in a federal case can be obtained only from the United States Supreme Court and not from the Supreme Court of Pennsylvania.

Unsuccessful in the district court and this court, and rebuffed by the United States Supreme Court, members of the Pennsylvania legislature, as private litigants, attempted a collateral attack on the several final judgments of the federal courts—both trial and appellate. What was attempted in the state courts and the ostensible relief granted by the state's highest court, of course, flies in the face of settled law and the doctrine of *res judicata*. The issue is not novel. The attempt has been made before. But the United States Supreme Court has issued clear instructions when collateral attacks on final

---

**3.** There the district court noted:

We would ... be gravely concerned about any view that would bind us to regard a violation of the internal authorization procedures of the Commonwealth Department of Justice as a basis for invalidating a factual stipulation entered into in the course of litigation. The Justice Department's responsibility is to supervise its duly appointed assistant attorneys general during litigation and not years afterward, and to stand behind representations and stipulations which its legal representatives made in a court of law.

426 F.Supp. at 1308 n. 21.

federal court judgments are attempted by state court systems:

> Congress ... has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions like the one here. And it does not matter that the prohibition here was addressed to the parties rather than to the federal court itself. For the heart of the rule as declared by this Court is that:
>
>> "[W]here the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.... The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."

*Donovan v. City of Dallas*, 377 U.S. 408, 413, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964), quoting *Peck v. Jenness*, 7 How. 612, 625, 12 L.Ed. 841 (1849).

 The Supreme Court of the United States is the final arbiter of conflicts between the several sovereignties under our federal system. Thus, although Congress implemented the Constitution's full faith and credit clause of Article IV, § 1, in language referring only to state courts,[4] there "is a clearly established rule that state courts must give full faith and credit to the proceedings of federal courts[.] That this is the rule is beyond doubt, and the state courts have generally accepted it." Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741, 744 (1976); *see also* 18 C.

Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4468 (1981) ("It would be unthinkable to suggest that state courts should be free to disregard the judgments of federal courts...."). The Supreme Court has consistently assumed that the implementing statute requires such recognition. Thus, in *Embry v. Palmer*, 107 U.S. 3, 17 Otto 3, 27 L.Ed. 346 (1882), the Court concluded that "the judgments of the courts of the United States have invariably been recognized as upon the same footing, so far as concerns the obligation created by them, with domestic judgments of the States, whenever rendered and whenever sought to be enforced." *Id.* 107 U.S. at 10. (citations omitted). *See also Hancock National Bank v. Farnum*, 176 U.S. 640, 20 S.Ct. 506, 44 L.Ed. 619 (1900); *Supreme Lodge, Knights of Pythias v. Meyer*, 265 U.S. 30, 33, 44 S.Ct. 432, 433, 68 L.Ed. 885 (1924). The precept has been most recently stated in 1938. In *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), the Court states that the implementing statute

> is broader than the authority granted by Article Four, section one, of the Constitution to prescribe the manner of proof and the effect of the judicial proceedings of states. Under it the judgments and decrees of the federal courts in a state are declared to have the same dignity in the courts of that state as those of its own courts in a like case and under similar circumstances.

*Id.* at 170, 59 S.Ct. at 137. We learn from Chief Justice Stone that the purpose of full faith and credit is to "establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of

---

4. 28 U.S.C. § 1738 provides in pertinent part:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

the rights of the parties in every other court as in that where the judgment was rendered...." *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 439, 64 S.Ct. 208, 214, 88 L.Ed. 149 (1943). Like the commerce clause, the full and credit clause "became a nationally unifying force." *Id.* Although Chief Justice Stone was writing in a state-to-state context, the principle is as powerful in state-federal relations. We agree completely with Professor Degnan that "[w]ere there no such rule, it would be necessary to invent one—so invent it the Supreme Court did." Degnan, *Federalized Res Judicata,* 85 Yale L.J. at 749. The rule that governs us today is succinctly stated by the Court in *Stoll:*

> [W]here the judgment or decree of the federal court determines a right under a federal statute, that decision is "final until reversed in an appellate court, or modified or set aside *in the court of its rendition.*"

305 U.S. at 170, 59 S.Ct. at 137, quoting *Deposit Bank v. Frankfort,* 191 U.S. 499, 520, 24 S.Ct. 154, 162, 48 L.Ed. 276 (1903) (emphasis supplied). "Any other conclusion strikes down the very foundation of the doctrine of *res judicata,* and permits the state court to deprive a party of the benefit of its most important principle, and is a virtual abandonment of the final power of the Federal courts to protect all who come before them relying upon rights ... established by the judgments of the Federal courts." *Deposit Bank v. Frankfort,* 191 U.S. at 520, 24 S.Ct. at 162.

■ Obviously, the Pennsylvania Supreme Court did not consider the doctrine of *res judicata* in rendering the *Scanlon* decision. Perhaps the parties did not brief the issue there, as they have failed to do in this court. However, Pennsylvania courts have long recognized the principle that state courts are bound by the judgments of federal courts. *See London v. City of Philadelphia,* 412 Pa. 496, 499, 194 A.2d 901, 902–03 (1963) (once federal court validly acquired jurisdiction, its jurisdiction extended to all matters ancillary to the main cause of action and it would violate *res judicata* doctrine to permit relitigation of state claim in state court); *Bardo v. Commonwealth of Pennsylvania,* 40 Pa. Commw. 585, 587 n. 1, 397 A.2d 1305, 1307 n. 1 (1979) ("It is clear that a federal court decision is res judicata in subsequent state proceedings."). Quite clearly, the Commonwealth could have litigated in 1978 in the federal court issues presented before the state court in *Scanlon.* But they elected not to do so. Having made that decision in 1978—for whatever reason—the Commonwealth today is bound by the federal judgment under *res judicata,* a doctrine recognized by the highest courts in both the federal and the Pennsylvania court systems.

■ Therefore, the case devolves to this. Only the federal courts have the power to determine the authority of federal court litigants, bringing suit under federal law, to enter into consent decrees approved by a federal court. The resolution of this dispute does not go to the substantive merits of the controversy, but it goes directly to basic jurisdictional powers of courts of separate sovereignties. Accordingly, although the Pennsylvania Supreme Court's discussion of state statutes and especially its motor vehicle code is impressive and erudite, jurisprudentially speaking, it is irrelevant to the overarching question of the competency of a state court to interfere with a final, federal court judgment bottomed on federal law.[5]

---

5. We are not presented in this appeal with a case arising solely from state substantive law. We only decide here the conclusive effect of a federal consent decree based on federal law. We are impressed, however, with the compelling legal reasoning embodied in a general rule proposed by Professor Degnan:

> A valid judgment rendered in any judicial system within the United States must be recognized by all other judicial systems within the United States, and the claims and issues precluded by that judgment, and the parties bound thereby, are determined by the law of the system which rendered the judgment.

Degnan, *Federalized Res Judicata,* 85 Yale L.J. at 773.

## III.

We must now apply the foregoing precepts to review the district court's exercise of discretion. The Commonwealth's motion to vacate the consent decree was based on Rule 60(b)(5) or, alternately, Rule 60(b)(6). We have held that Rule 60(b) "provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Mayberry v. Maroney,* 529 F.2d 332, 335 (3d Cir.1976). Under Rule 60(b)(5) the Commonwealth is required to demonstrate that it was entitled to be relieved from the terms of the consent decree because "it is no longer equitable that the judgment should have prospective application". Under this rule relief is permitted for "any ... reason [other than those enumerated in the preceding sections of the rule] justifying relief from operation of the judgment." F.R.Civ.P. 60(b)(6).

We now consider whether equities were present in such quantity so as to persuade us to determine that there was an abuse of discretion. We have previously emphasized that in signing a consent decree, the signatories make "a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment." *United States Steel Corp. v. Fraternal Association of Steelhaulers,* 601 F.2d 1269, 1274 (3d Cir. 1979). At oral argument counsel for the Commonwealth was asked to state for the record who he represented in these proceedings. We were informed that he represented the executive branch of the state government, including the Governor, the Secretary of PennDot and the Secretary of the Department of Environmental Resources. He was asked that if we were to grant the relief sought in this appeal whether Pennsylvania was prepared to return over one-half billion dollars of highway funds distributed by the federal government in reliance upon Pennsylvania's compliance with the consent decree. We were informed that there was no such

intention. He was also asked that if Pennsylvania were successful, did the state authorities intend to dismantle the emission inspection and maintenance program now in effect in the Philadelphia and Pittsburgh areas. We were told that there was no such intention. Under these circumstances, in addition to the settled law that a final federal court judgment based on federal law cannot be collaterally attacked by a state court, we find a profound lack of equities in the Commonwealth's position before the district court.

The judgment of the district court will be affirmed in all respects.[6]

STERN, District Judge, concurring:

I wholeheartedly join in the majority opinion. I write only to emphasize what is, for me, the most important basis for decision.

We are confronted with an order from the court of a state enjoining compliance with the final orders of the courts of the United States.

The state's order is untenable not only because the prior federal order was res adjudicata, which it was, but because a state has no power to disturb any federal decree. This conclusion flows necessarily from the constitutional principles that structure "Our Federalism," and most particularly from the supremacy clause.

State courts are "destitute of all power" to interfere with the proceedings or decisions of the national courts. *Central National Bank v. Stevens,* 169 U.S. 432, 460–61, 18 S.Ct. 403, 413–14, 42 L.Ed. 807 (1898) (exemption from interference by state judicial action is "essential" to the "independence and efficiency of United States courts); *see also Riggs v. Johnson,* 73 U.S. (6 Wall.) 166, 194–96, 18 L.Ed. 768 (1867) ("the Constitution itself becomes a mockery ... if ... the nation is deprived of the means of enforcing its own laws by the

---

**6.** We are confident that the Commonwealth will encounter no further interference with its respect of the federal court decree. It scarcely needs mention that in the event of a further

attempt, the Commonwealth parties may avail themselves of remedies "to protect and effectuate [United States court] judgments" permitted under 28 U.S.C. § 2283.

instrumentalities of its own tribunals"); *McKim v. Voorhies,* 11 U.S. (7 Cranch) 279, 280, 3 L.Ed. 342 (the state court has no jurisdiction to enjoin a judgment of the circuit court of the United States). The Constitution's full faith and credit clause is neither the source of this principle nor the best basis for today's decision. The clause addresses only relations between states, declaring that one state must respect the judicial proceedings of another state. U.S. Const. art. IV, § 1.

The ultimate source for binding state courts to federal decrees is the supremacy clause, part of article VI, as it operates through article III. See 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4468 (1981). Article III gives to the Supreme Court and to congressionally created "inferior courts" the "judicial power" to decide certain "cases" and "controversies." U.S. Const. art. III, §§ 1, 2. Since 1792, finality of judgments has been recognized as an essential attribute of this federal judicial power to render decisions. *See Hayburn's Case,* 2 U.S. (2 Dall.) 408, 410, 413, 1 L.Ed. 436 (1792). The statutes enacted to implement the jurisdiction of the Supreme Court and of the lower federal courts, then, are statutes that contemplate entry of final judgments by the federal courts. By command of the supremacy clause, judges in every state are bound by these statutes, which in turn give to the federal courts the power to render unassailable final judgments.

In my view, the courts of the Commonwealth of Pennsylvania were without power to enjoin compliance even with a federal court decree that was preliminary. Indeed, it is for this reason that the federal courts, as a matter of self-restraint, have developed the doctrine of comity so as not to interfere with pending state proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1974). Without that self-restraint, the courts of the nation could enjoin pending matters in the courts of the states—not merely as victors of a race to judgment rewarded with res adjudi-

cata, but as the tribunals of a superior sovereign. If the state courts have no power to interfere with pending federal cases, it follows that they have no power to disturb a federal judgment that was final.