40 A.3d 1212

**In re the Nomination Petitions and Papers of Carl STEVENSON as a Candidate for State Representative in the 134th Legislative District.**

**Appeal of Carl Stevenson.**

Supreme Court of Pennsylvania.

Submitted Sept. 8, 2010.

Decided March 26, 2012.

54

Shauna Christine Graves, PA Department of State, for Amicus Curiae, Secretary of the Commonwealth.

Paige Hennessey Forster, Reed Smith, L.L.P. Pittsburgh, Mary Catherine Roper, American Civil Liberties Union of Pennsylvania, Witold J. Walczak, Kim M. Watterson, Reed Smith, L.L.P., Pittsburgh, for Carl Stevenson.

Louis Lawrence Boyle, Shauna Christine Clemmer, for Bureau of Elections, Department of State.

Lawrence M. Otter, for Michael W. Gibson and Robert W. Mader.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Chief Justice CASTILLE.

This Opinion addresses an Application for Relief in an Election Code matter, over which this Court retained limited jurisdiction following a remand on October 4, 2010. The issue involves the effect of the District Court's decision in *Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D.Pa.2002). The *Morrill* court held that Section 2911(d) of the Election Code, 25 P.S. § 2600 *et seq.*, which the federal court construed as imposing a

district residency requirement for affiants circulating nomination papers violates the First Amendment. The district court permanently enjoined the Commonwealth from enforcing the statutory provision, and the Commonwealth did not appeal that decision. The importance of the issue, particularly as it affects the Secretary of the Commonwealth ("Secretary") in policing elections in accordance with the federal district court's decision, is explained below. For the reasons that follow, we hold that the Commonwealth and the Secretary are bound by the district court decision in *Morrill,* and may not enforce Section 2911(d) as written.

This question of the constitutionality of Section 2911(d) and the effect of *Morrill* arise in connection with a challenge to the nomination paper[1] submitted by Carl Stevenson ("Stevenson") as an independent candidate for the office of State Representative in Pennsylvania's 134th Legislative District[2] in the 2010 general election. Michael W. Gibson and Robert W. Mader ("Objectors") filed a petition to set aside in the Commonwealth Court, raising both signature challenges and a global challenge to Stevenson's nomination paper. Objectors' global challenge alleged that signatures on three pages of the nomination paper were invalid because the circulator of those pages resided outside the 134th Legislative District, in supposed violation of Section 2911(d).[3] Stevenson countered,

1. "Pursuant to the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §§ 2600–3591 (Election Code), candidates who run in party primaries file 'nomination petitions' and those who are candidates of political bodies (independent of minor parties) file 'Nomination Papers.'" *In re Nader,* 580 Pa. 22, 858 A.2d 1167, 1170 n. 1 (2004); *see also In re Nomination Papers of Mann,* 944 A.2d 119, 124 (Pa.Cmwlth.2008) ("[A] nomination petition is filed by a person seeking to be a candidate in a political party's primary. A 'nomination paper' is filed by a minor party candidate to get on the general election ballot.").

2. For the 2010 general election, the 134th Legislative District encompassed parts of Berks County and Lehigh County. Objectors' Memorandum of Law at 1–2.

3. Section 2911 states that the affidavit appended to a nomination paper is to set forth that "the affiant is a qualified elector of the State, or the electoral district, as the case may be, referred to in the nomination paper." 25 P.S. § 2911(d). A "qualified elector," in turn, is defined as

*inter alia*, that Objectors' global challenge failed because Section 2911(d) was unconstitutional under the First Amendment of the U.S. Constitution,[4] insofar as it imposed a district residency requirement upon circulators. In support of his First Amendment argument, Stevenson cited the federal district court's decision and permanent injunction in *Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D.Pa.2002).

█ On August 19, 2010, in a single judge memorandum opinion and order, the Commonwealth Court rejected Stevenson's First Amendment argument. The Commonwealth Court reasoned that "[t]he purpose of the residency requirement for

"any person who shall possess all the qualifications for voting now or hereafter prescribed by the Constitution or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." 25 P.S. § 2602(t). The Pennsylvania Constitution sets forth age, citizenship and residency requirements for qualified electors. As to residency, the Constitution states: "He or she shall have resided in the election district where he or she shall offer to vote at least sixty (60) days immediately preceding the election, except that if resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within sixty (60) days preceding the election." PA. CONST. ART. vii, § 1.

The *Morrill* court noted that the constitutional definition of residency was fixed at 60 days preceding an election, a date which would not occur until after nomination papers would have been filed. The *Morrill* court found that "the definition is inconclusive, for our purposes." *Morrill*, 224 F.Supp.2d at 896 n. 16. Apparently, the *Morrill* court believed that there could be an ambiguity concerning the parameters of Section 2911(d)'s residency requirement. The court did not have to resolve any supposed ambiguity, however, because the litigants "agree[d] that § 2911(d) unequivocally requires that nominating petition affiants in Pennsylvania must be residents of the electoral districts in which they are certifying signatures." *Id.* at 900.

Similarly, while the litigants in the matter *sub judice* contested whether the residency requirement was enforceable, they did not dispute whether Section 2911(d) imposed a residency requirement. We need not decide, and offer no opinion on, whether the residency requirement of Section 2911(d) is in any fashion ambiguous.

4. The First Amendment provides that:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I. The First Amendment is made applicable to the states via the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

affiants is to ensure that papers are circulated by persons with at least some interest and stake in their communities in order to express the true will of the people within that electoral district." *In re Stevenson*, 643 MD 2010, slip op. dated 8/19/2010, at 6. With respect to *Morrill*, the Commonwealth Court noted, correctly enough, that courts of our Commonwealth are not bound by decisions of federal courts inferior to the U.S. Supreme Court. The court thus stated that it was not bound by *Morrill*. The court further observed that its rejection of *Morrill* was consistent with previous decisions finding that *Morrill* is not binding. *Id.* at 7 (citing *In re Payton*, 945 A.2d 279 (Pa.Cmwlth.Ct.2008); [5] *In re Nomination Paper of Rogers*, 908 A.2d 942 (Pa.Cmwlth.Ct.2006); *In re Petition for Agenda Initiative*, 821 A.2d 203 (Pa.Cmwlth.Ct. 2003)).

After finding that Section 2911(d)'s residency requirement was valid, the Commonwealth Court struck all signatures on the nomination paper circulated by the affiant, who was not a resident of the 134th district. The court set Stevenson's nomination paper aside, and ordered the Secretary to strike Stevenson's name from the general election ballot.[6]

On direct review in this Court, Stevenson renewed the arguments he had made below, asserting, *inter alia*, that the

5. While this Court entered a *per curiam* affirmance of the Commonwealth Court's order in *Payton*, the Section 2911(d) residency requirement issue, and the effect of *Morrill*, was not appealed to our Court. *See In re Payton*, 596 Pa. 469, 945 A.2d 162 (2008). Also, when this Court issues a *per curiam* affirmance, "[u]nless we indicate that the *opinion* of the lower tribunal is affirmed *per curiam*, our order is not to be interpreted as adopting the rationale employed by the lower tribunal in reaching its final disposition." *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 904 (1996) (emphasis in original). The *per curiam* affirmance in *Payton* did not adopt the lower court's rationale.

6. The Secretary is charged with the duty "[t]o determine, in accordance with the provisions of this act, the forms of nomination petitions and papers ... the form of which he is required to determine under the provisions of this act." 25 P.S. § 2621(a). The Secretary is also responsible to "certify to county boards of elections for primaries and elections the names of the candidates for ... all State offices" and to "receive and determine ... the sufficiency of nomination petitions, certificates and papers of candidates for ... all State offices, including senators, representatives...." *Id.* at § 2621(c),(d).

application of a district residency requirement under Section 2911(d) unconstitutionally burdens his First Amendment right to associate for political purposes, the right to vote, and the right to express political preferences. He argued that, as the *Morrill* court had determined, Section 2911(d)'s residency requirement constitutes an unconstitutional restriction upon the rights of both candidates and petition circulators, and thus, the statute cannot be enforced.

Stevenson asserted that the district residency requirement burdens core political speech, and is thus subject to strict scrutiny. He claimed that the requirement imposes a severe burden on the First Amendment rights of candidates and their supporters as literally millions of Pennsylvania electors are deprived of their right to associate based upon residency. He acknowledged that there are thousands of potential circulators who are residents of the 134th Legislative District; but, he noted that the important determinative factor is not how many potential circulators there are, but rather how many people are precluded from being potential circulators.

Stevenson also noted that the Secretary did not attempt, in this case, to show that the residency requirement is narrowly tailored to meet a compelling governmental interest. Stevenson argued that even if the Commonwealth had tried to make such a showing, it would not have been able to meet its burden. In a bit of sideways reasoning, Stevenson posited that the Commonwealth's compliance with the injunction in *Morrill*, and the Commonwealth's decision not to appeal from that decision, effectively undermines any argument that the Commonwealth has a compelling interest in enforcing Section 2911(d). Stevenson claimed that years of compliance with the *Morrill* court's permanent injunction, without the election system grinding to a halt, establishes that there is no compelling interest in enforcing Section 2911(d). Stevenson also asserted that any interest the Commonwealth could posit in having local circulators is undercut, moreover, by the lack of a local residency requirement for circulators in statewide races. Thus, argues Stevenson, for dozens of statewide races, circulator affiants may be residents of any part of Pennsylvania, and

they certainly cannot be presumed to know everyone in the Commonwealth.

Additionally, Stevenson asserts that even assuming that the government had articulated a compelling interest, the district residency requirement for circulators is still unconstitutional because it is not narrowly tailored. Stevenson observed that the Commonwealth in *Morrill,* and the Commonwealth Court below, posited that the district residency requirement ensures that a circulator has a personal stake in the district; the district residency requirement thus ensures that the election expresses the true will of the people. Stevenson asserts that this argument is hollow, as the true will of the people is adequately ensured by requiring that a nomination paper bear the signatures of hundreds of qualified, resident electors in order for the proposed candidate's name to be placed on the ballot. Stevenson notes that "[t]he residence of the witness to those signatures neither adds to nor subtracts from the support from the electorate, and therefore is not narrowly tailored to promote that interest." Stevenson's Brief at 14 n. 7.

In their brief to our Court, Objectors responded that we should avoid the constitutional issue and instead turn our decision on the individual line challenges to the nomination papers. They also argue that, to the extent we consider the merits of the First Amendment challenge, we are not bound by the *Morrill* decision as it issued by a federal court inferior to the U.S. Supreme Court.

The Secretary submitted an *amicus curiae* brief, informing us that he took no position in support of either Stevenson or Objectors on the merits. The brief explained that upon the advice of the Attorney General, no appeal was taken from the *Morrill* judgment. The brief further stated that the Commonwealth has been complying with the final judgment and permanent injunction entered in *Morrill.* The Secretary pointed out that, consistently with that injunction, the form nomination papers and instructions provided to prospective candidates do not require circulator affiants to state that they are qualified electors of the electoral district of the candidate.

The Secretary voiced concern that the Commonwealth Court's order directing the Secretary to strike Stevenson's name from the ballot put the Secretary in a position that was inconsistent with the Commonwealth's obligation to abide by the final judgment entered in *Morrill.* The Secretary asked for guidance from this Court in the administration of future elections.

On October 4, 2010, we issued our *per curiam* order vacating the order of the Commonwealth Court. We did not resolve the First Amendment issue. Rather, we remanded to the Commonwealth Court for the limited purpose of the lower court considering Objectors' non-constitutional challenges to individual signatures on the nomination papers. We also specifically "reserve[d] limited jurisdiction to issue a supplemental decision, or direct further briefing, if such proves advisable" regarding the First Amendment challenge. *In re Stevenson,* 608 Pa. 397, 12 A.3d 273, 276 (2010).

On remand, the Commonwealth Court considered and sustained the individual signature challenges.[7] Accordingly, on October 8, 2010, the court ordered that the Secretary strike Stevenson's name from the ballot on that distinct basis. Stevenson did not appeal.

Rather, Stevenson filed an Application for Relief with this Court. The Application asks that we determine whether the district residency requirement in Section 2911(d) violates the First Amendment. Stevenson asserts that this case provides an opportunity to clear away the confusion that surrounds a significant provision in the Election Code. He urges that a definitive ruling would provide certainty to candidates and to the Secretary as to the requirements that Section 2911(d) imposes upon nomination paper circulators and affiants.

Preliminarily, Stevenson acknowledges that his First Amendment complaint has become moot in the context of this

---

7. On remand, the Commonwealth Court also directed Stevenson to notify the Attorney General, per Pa.R.A.P. 521, that Stevenson was challenging the constitutionality of a statute. Stevenson provided notice to the Attorney General. The Attorney General did not, however, participate in the Commonwealth Court or in this Court.

litigation. According to Stevenson, the issue was rendered moot when Objectors withdrew their global challenge to his Nomination Paper during the remand hearing. Notwithstanding that his First Amendment complaint is moot, Stevenson contends that we should entertain and decide the issue because it is subject to the mootness exception governing issues of great public importance, which are capable of repetition and likely to evade review. Stevenson asserts that he presents a crucially important question, lying at the intersection of constitutional rights and the orderly administration of Pennsylvania elections. He further contends that the issue clearly has the potential to recur. In addition, he notes that this Court has recognized that election-related issues are likely to evade review because of the abbreviated time-frame in which elections occur. Application for Relief at 8–9 (citing, *inter alia, Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401, 405 n. 8 (2007); *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331, 1333 (1986)).

Neither the Secretary nor the Objectors has filed a response to Stevenson's Application for Relief.

■ As Stevenson recognizes, the threshold question is mootness. We agree that Stevenson's First Amendment issue is moot, but not for the reason he offers. The remand this Court ordered was limited to consideration of the Objectors' individual line challenges, while jurisdiction was reserved in this Court over the First Amendment issue. Because Objectors' global challenge was not before the Commonwealth Court on remand and the First Amendment issue remained in the jurisdiction of this Court, Objectors' purported withdrawal of their global challenge did not remove the First Amendment issue from this Court. Instead, the issue became moot because the Commonwealth Court's final judgment of October 8, 2010, which Stevenson did not appeal, set Stevenson's Nomination Paper aside on other grounds. That unappealed ruling put an end to his candidacy and to any live controversy.

■ Generally, courts will not address a moot case. However, "we have reviewed moot matters, in our discretion, when the issue presented is one of great public importance or is one that is capable of repetition yet evading review." *See Association of Pennsylvania State College and University Faculties v. PLRB,* 607 Pa. 461, 8 A.3d 300, 305 (2010); *Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 600–01 (2002).

■ Notably, our October 4, 2010 order, exercising residual jurisdiction over the First Amendment issue, cited factors involved in assessing mootness exceptions, although we did not purport to determine, at that time, that the issue warranted decision even if rendered moot. We explained that we would retain jurisdiction over the question of the enforceability of Section 2911's residency requirement as it was an important election question that had the potential to recur. The importance of the issue is significantly heightened by the practical circumstance of the quandary facing the Secretary in every election cycle, given the tension between what the statute is said to require and the permanent injunction in *Morrill,* to which the Commonwealth is presently subject. In addition, the issue has the potential to arise in the crucible of an election contest, thereby leaving little time for considered deliberation. Furthermore, this matter presents a focused, and purely legal, issue. Under these circumstances, we find that it is appropriate to address the moot issue.

The federal district court's *Morrill* decision, and its possible controlling or complicating effect, has been the focus of the lower court and the participants before this Court. In *Morrill,* the plaintiffs alleged that Section 2911(d) violated the plaintiffs' rights to free political expression and association under the First and Fourteenth Amendments. The suit was brought against the Commissioner of the Bureau of Commissions, Elections and Legislation ("the Commissioner") and the Secretary (collectively, "the Commonwealth"). The Attorney General's Office represented the Commonwealth before the federal trial court.

In ruling for the plaintiffs in *Morrill*, the Honorable Franklin S. Van Antwerpen (now on the Third Circuit) relied heavily on *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). The *Buckley* Court had found that a Colorado statute which required initiative petition circulators to be registered voters violated the First Amendment. The *Morrill* court observed that *Buckley* held that " '[p]etition circulation is core political speech,' because it involves interactive communication concerning political change. First Amendment protection for such interaction ... is at its zenith." *Morrill*, 224 F.Supp.2d at 897 (internal quotation marks and citation omitted.) The *Morrill* court further stated that, per *Buckley*, it was required to "examine the character and magnitude of the burden imposed by § 2911(d) on candidates' and activists' First Amendment rights and the extent to which the law serves Pennsylvania's interests." *Id.* at 898 (citation omitted). The *Morrill* court stated that "[l]aws which are severely burdensome to constitutional freedoms must be narrowly tailored to serve compelling state interests, while less burdensome statutes receive less exacting scrutiny." *Id.* (citation omitted).

The *Morrill* court then found that the in-district residency requirement of Section 2911(d) severely burdened First Amendment rights as millions of Pennsylvanians who happened not to be residents of a legislative district were prohibited from being nomination paper affiants. The court noted that its holding was in keeping with decisions of other federal courts which had found that similar residency requirements were unconstitutional. *Id.* at 900–01 (citing *Krislov v. Rednour*, 226 F.3d 851 (7th Cir.2000) and *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135 (2nd Cir.2000)).

The *Morrill* court rejected all of the Commonwealth's arguments in support of the residency restriction. The *Morrill* court first rejected the Commonwealth's argument that, in general, to promote order and fairness, there must be a district residency requirement. The court found that this argument was ill-defined. It reasoned that the residency

requirement was not narrowly tailored to meet the alleged goals of order and fairness.

The *Morrill* court next rejected the Commonwealth's argument that requiring affiants to be district residents helped to ascertain the will of the electorate. The *Morrill* court found that "the local residents' required petition signatures already fulfill this mission." *Id.* at 903 (citation omitted).

The *Morrill* court then found that the Commonwealth's "third argument—that the residency requirement helps ensure the signatures' validity—is the most clearly flawed." Indeed, the court found it "patently absurd" that a resident of a district would be in a better position to know the thousands of district residents than someone who was not from the district. *Id.*

The *Morrill* court dismissed the Commonwealth's fourth, and final, argument, which alleged that the district residency requirement was necessary so that affiants would be available to resolve controversies. The *Morrill* court noted that Pennsylvania courts and election officials have statewide subpoena power. Thus, the *Morrill* court posited, the availability interest could be fully served by a requirement that nomination paper affiants are merely Pennsylvania residents, rather than Section 2911(d)'s far more restrictive requirement that affiants be district residents.

In its analysis, the *Morrill* court specifically rejected the Commonwealth's argument that the decision in *Initiative and Referendum Institute v. Jaeger*, 241 F.3d 614 (8th Cir.2001), was persuasive authority for the position that Section 2911(d)'s residency requirement was constitutional. The *Morrill* court noted that the North Dakota statute in question in *Jaeger* was distinguishable from Section 2911(d) in that the North Dakota statute merely required that the petition circulator be a qualified elector who was a resident of the state. The North Dakota statute thus allowed all 476,000 qualified North Dakotan electors to be petition circulators, while Section 2911(d) prevents millions of qualified Pennsylvania electors from being nomination paper affiants. The challenged North Dakota stat-

ute, thus, was far narrower than Section 2911(d). Additionally, the *Jaeger* court had found that this requirement furthered North Dakota's compelling interest to prevent fraud by ensuring that any circulator was subject to subpoena, and was no broader than necessary to achieve this goal.

The *Morrill* court concluded that Section 2911(d)'s residency requirement severely burdened First Amendment rights of free political expression and association. Additionally, the court found that the requirement was not narrowly tailored to serve a compelling state interest. Accordingly, the court found that the portions of Section 2911(d) requiring that nomination paper affiants in Pennsylvania be residents of particular electoral districts violate the citizens' rights to free political expression and association, under the First and Fourteenth Amendments to the United States Constitution. As relief, the *Morrill* court permanently enjoined the Commonwealth from enforcing these provisions.

In terms of the Commonwealth-wide importance of the *Morrill* decision, there are two points, beyond the merits, worth emphasizing. First, the defendant in *Morrill* was not a private entity, or even a local political subdivision; rather, the defendant was the Commonwealth itself, through the Secretary and the Commissioner, and representation was provided by the Commonwealth's chief enforcement officer, the Attorney General. Second, the Commonwealth did not appeal the *Morrill* decision. Instead, as noted in the Secretary's brief to our Court in the matter *sub judice,* the Commonwealth has been complying with the final judgment and permanent injunction entered against it in *Morrill,* which entails non-enforcement of Section 2911(d).

The predicate question in the present matter is the effect, if any, of the unappealed and now-final judgment in *Morrill,* when an issue arises in state court concerning Section 2911(d). As this litigation reveals, election challenges involving nomination papers oftentimes involve private parties, with Commonwealth entities, such as the Secretary, only tangentially involved. In this case, the Commonwealth Court dismissed *Morrill* entirely, deeming itself free to exercise its own inde-

pendent judgment on the meaning and constitutionality of Section 2911(d). In its August 19, 2010 opinion, the court observed that Pennsylvania courts are not constrained by decisions of federal courts inferior to the U.S. Supreme Court. The Objectors echoed this position, asserting that we should find that *Morrill* is not controlling as it is merely a federal trial court decision.

On the other hand, the Secretary has argued that the Commonwealth Court's August 19, 2010 order placed the Secretary in an untenable position. The Secretary observed that he could not both continue complying with *Morrill*'s permanent injunction and honor the Commonwealth Court's directive in this case that the provisions of Section 2911 must be applied and enforced.

■■■■ The Commonwealth Court was not incorrect in observing that the pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth—although we certainly are bound by the decisions of the U.S. Supreme Court on questions of federal law. *See Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 363 n. 15 (1995). We are not constrained to accept the reasoning of the lower federal courts merely because those courts addressed an issue before a Pennsylvania state court had an opportunity to do so.

But, the proper judicial approach, in this instance, is not so simple. The issue is not whether we are obliged to follow the reasoning and holding of a lower federal court on an issue. Nor is the task even so simple as determining whether we believe the district court's substantive analysis of First Amendment jurisprudence in assessing Section 2911(d) was sound. Rather, the issue implicates core concerns of federalism, comity, and practicality. Specifically, the issue requires awareness and consideration of the preclusive effect of a final federal judgment, to which the Commonwealth was a party, permanently enjoining the application of the residency requirements of Section 2911(d).

There is an essential difference between a federal court's reasoning and its judgment. The judgments of the federal courts are owed their due force and full effect in state courts. *Embry v. Palmer*, 107 U.S. 3, 10, 2 S.Ct. 25, 27 L.Ed. 346 (1883) ("[T]he judgments of the courts of the United States have invariably been recognized as upon the same footing, so far as concerns the obligation created by them, with domestic judgments of the States, whenever rendered and whenever sought to be enforced.") (citations omitted). Furthermore, it is axiomatic that fully litigated, final judgments are given preclusive effect. The High Court has recognized that "res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). These two doctrines "preclud[e] parties from contesting matters that they have had a full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (internal quotation marks and citations omitted). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action...." *Allen*, 449 U.S. at 94, 101 S.Ct. 411. "Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Modern collateral estoppel doctrine no longer requires mutuality; a litigant who was not a party to the initial litigation may now use collateral estoppel offensively in a new suit against the party who lost on the decided issue in the initial case. *Allen*, 449 U.S. at 94–95, 101 S.Ct. 411.[8]

8. The U.S. Supreme Court has held that nonmutual offensive collateral estoppel does not apply against the United States government. *See United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). The *Mendoza* Court noted that allowing the employment of nonmutual offensive collateral estoppel against the U.S. government:

68

 The question of whether a federal judgment has preclusive effect is answered through application of the federal common law, regardless of whether the question of preclusive effect is raised in a federal or state court action. *Taylor*, 553 U.S. at 891, 128 S.Ct. 2161.[9] Federal law provides that while the courts have discretion to find that the issue of *res judicata* has been waived, the failure of the parties to raise the issue

> would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari. Indeed, if nonmutual estoppel were routinely applied against the government, this Court would have to revise its practice of waiting for a conflict to develop before granting the government's petitions for certiorari.

*Id.* at 160, 104 S.Ct. 568. The Court also observed that a contrary holding could have the effect of encouraging the U.S. government to litigate vigorously each and every case, in every jurisdiction, without employing its discretion as to what lengths a particular matter should be litigated. The High Court observed the irony that would obtain in such a scenario in that collateral estoppel, which springs from a desire to promote judicial economy, could in this situation have the opposite effect.

Some courts have extended the *Mendoza* doctrine to state governments. *See State of Idaho Potato Comm'n v. G & T Terminal Packaging*, 425 F.3d 708 (9th Cir.2005); *Hercules Carriers, Inc. v. Florida*, 768 F.2d 1558 (11th Cir.1985). *But see Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir.1990) (declining to extend *Mendoza* to a state government); *State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947 (Alaska 1995) (same). The U.S. Supreme Court has not, however, extended the *Mendoza* doctrine to state courts. In the absence of an express extension; given that the policy concerns undergirding *Mendoza* do not have inexorable application to state governments; and noting that the Secretary has not advocated to extend *Mendoza*, but rather, the Commonwealth has abided by the *Morrill* judgment, we will not extend *Mendoza* in the present context.

9. The U.S. Supreme Court has declared that it sets the law regarding the preclusive effect for all federal judgments, whether the judgments were derived from a federal court sitting in diversity or from a federal court whose jurisdiction derived from its consideration of an issue of substantive, federal law. With respect to a judgment from a federal court sitting in diversity, however, the U.S. Supreme Court has directed that, in determining whether that judgment is to be granted *res judicata* effect in state court, the state court is to employ its own state *res judicata* jurisprudence. *See Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). *Semtek* is not applicable here, however, as the *Morrill* court was not sitting in diversity.

does not tie the court's hands. Rather, a court may, "in appropriate cases," *sua sponte* raise the issue of the preclusive effect of a prior judgment. *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 231, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). By the ability to act spontaneously in this scenario, courts can act to conserve judicial resources.

Although the issue of the preclusive effect of *Morrill* has not been raised in those terms in this case, Stevenson did argue that *Morrill* supported his position, and the Commonwealth Court responded by finding that the decision and permanent injunction entered by *Morrill* was of no moment. Additionally, the Commonwealth Court's August 19, 2010 mandate, which flatly declared that *Morrill* would not be honored and directed the Secretary to strike Stevenson's name, inevitably placed the Secretary in the untenable position of being directed to take an action in this case that was squarely in contravention of the *Morrill* court's permanent injunction. Although the Secretary was not a party to the litigation, he is the subject of the Commonwealth Court's enforcement order (just as he is the subject of the *Morrill* injunction). The Secretary understandably asked for guidance concerning his responsibility. These circumstances necessarily require us to examine the preclusive effect of the *Morrill* judgment.

Upon consideration, we have no doubt that *Morrill* has preclusive effect. There was a fair opportunity to litigate the enforceability of Section 2911(d)'s district residency requirement, and in fact the Commonwealth defended the statute vigorously. The issue was fully briefed, and thoroughly explored by the *Morrill* court. Finally, the purpose of granting preclusive effect to an earlier determination, *i.e.,* in order to prevent inconsistent decisions, is very much in evidence here. The Commonwealth Court, by directing the Secretary to strike Stevenson's name from the ballot due to noncompliance with Section 2911(d), dictated that the Secretary perform an act that put him in direct contravention of the *Morrill* federal permanent injunction; this placed the Secretary in the position of being subject to the orders of two different courts, unable to comply with one without violating the dictates of the

other. It is this type of inconsistency that the doctrines of *res judicata* and collateral estoppel were meant to avoid.[10]

The situation presented here, though unusual, is not entirely without helpful precedent. The U.S. Court of Appeals for the Third Circuit confronted a similar situation in the protracted litigation in the 1970s and 1980s regarding our Commonwealth's compliance with the federal Clean Air Act, 42 U.S.C. § 7401 *et seq.* In 1977, federal suits were filed to compel our Commonwealth to implement a vehicle emission inspection and maintenance program ("I/M program"). Those lawsuits were concluded in 1978 pursuant to a consent decree approved by the federal district court. The decree called for the Pennsylvania Department of Transportation ("PennDOT") to seek legislation establishing a system for vehicle inspection stations. The consent decree specifically provided that if the General Assembly failed to approve such a system, PennDOT was required to promulgate regulations allowing for the certification of private garage facilities to perform the inspections.

Subsequently, the General Assembly passed a bill that prohibited expenditure of any funds on the I/M program. The governor vetoed the bill. On October 5, 1981, the General Assembly subsequently overrode the veto, and the bill became law.

The Commonwealth then filed a motion in federal court requesting, *inter alia,* a stay and a modification of the consent decree. The district court denied relief. The Third Circuit

10. In separate concurring opinions, Messrs. Justice Saylor and Baer express disagreement with our invocation of the concepts of *res judicata* and collateral estoppel on the ground that there is a lack of identity of parties here. The concurrences are correct that this admittedly peculiar matter does not fall neatly into ordinary issue preclusion paradigms. Indeed, the Secretary is not a party here; however, the Secretary was the subject of the Commonwealth Court's orders below, a position typically held only by parties to litigation. What drives this matter is an unusually complex mix of concerns which include not only the practical preclusive effects of judgments, but also federalism, comity, the effect of injunctions, and the need to address the untenable position of the executive branch being subject to mutually inconsistent orders. Nothing in this Opinion should be read as intending to alter governing precepts of *res judicata* or collateral estoppel standards in the ordinary case.

affirmed on appeal, finding that the unappealed final consent judgment was binding. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth,* 678 F.2d 470 (3rd Cir.1982), *cert. denied,* 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

Conterminously, declaratory judgment actions were brought by members of the General Assembly in the Commonwealth Court. The actions sought a declaration that PennDOT was not empowered to enter into a consent decree committing the Commonwealth to the implementation of an I/M program. The actions also requested that the court issue an injunction, enjoining the performance and conditions of the consent decree without obtaining authorization from the Legislature. The Commonwealth Court denied the legislators relief, and found that PennDOT did have the authority to enter into the consent decree mandating the implementation of an I/M program.

On appeal, this Court considered whether the Commonwealth Court correctly decided that the state officials who entered into the consent decree had the authority to commit the Commonwealth to implementation of the emissions program. Concluding that the officials had no such authority, we reversed the order of the Commonwealth Court, declared the federal consent decree a nullity, and directed that its implementation be enjoined. *Scanlon v. Commonwealth,* 502 Pa. 577, 467 A.2d 1108 (1983).

With the *Scanlon* decision in hand, the Commonwealth filed a motion with the federal district court, seeking relief from the consent decree. The district court denied the motion. The Court of Appeals for the Third Circuit affirmed on appeal. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth,* 755 F.2d 38 (3rd Cir.1985), *cert. denied,* 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985) (*"Delaware Valley II "*).[11] The Third Circuit observed that there "is a clearly established

11. There were generations of litigation in the I/M program dispute; at times, parallel litigation occurred simultaneously in various courts. We refer to this 1985 decision as *"Delaware Valley II "* for ease of nomenclature, and do not suggest that it was only the second decision in the totality of the protracted litigation.

rule that state courts must give full faith and credit to the proceedings of federal courts[.]" *Id.* at 43 (internal quotation marks and citations omitted). The Third Circuit found *Scanlon* to be an impermissible collateral attack on a federal judgment. The court stated:

> Obviously, the Pennsylvania Supreme Court did not consider the doctrine of *res judicata* in rendering the *Scanlon* decision. Perhaps the parties did not brief the issue there, as they have failed to do in this court. However, Pennsylvania courts have long recognized the principle that state courts are bound by the judgments of federal courts. Quite clearly, the Commonwealth could have litigated in 1978 in the federal court issues presented before the state court in *Scanlon.* But they elected not to do so. Having made that decision in 1978—for whatever reason—the Commonwealth today is bound by the federal judgment under *res judicata,* a doctrine recognized by the highest courts in both the federal and the Pennsylvania court systems.

*Delaware Valley II,* 755 F.2d at 44 (citations omitted).

The Commonwealth Court here, like this Court in *Scanlon,* did not have the benefit of an argument setting forth the *res judicata* implications of the prior federal decision. But, the implications are unavoidable as a practical matter, and the Secretary is subject to the same dilemma anytime a challenge is presented under Section 2911(d). The *Delaware Valley II* court's decision comports with our understanding of the operation of the doctrine, in federal-state matters, as outlined above. As with the *Delaware Valley II* case, the present matter involves a federal claim that was the subject of a final federal judgment that directs ongoing compliance from the Commonwealth. Also, the compliance demanded from the Commonwealth, in both situations, is global in nature; the federal court's final judgment, in each case, did not merely require that the Commonwealth act only with respect to the parties who had appeared in the initial federal action. We agree with the reasoning of the *Delaware Valley II* court, and find that the permanent injunction imposed by the unappealed *Morrill* decision cannot be evaded. The practical effect of this

recognition is that the district residency requirement, as currently embodied in Section 2911(d), is unenforceable, absent legislative amendment.[12]

For the foregoing reasons, we find, in response to the Application for Relief, that the final decision in *Morrill* is binding upon the Commonwealth. Accordingly, the district residency requirement discerned in Section 2911(d) is unenforceable by the Secretary and the courts of this Commonwealth. Pennsylvania courts shall not enter orders that would be in tension with the permanent injunction issued in *Morrill.*

Residual jurisdiction relinquished.

Justices EAKIN, TODD, McCAFFERY and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice BAER files a concurring opinion.

Justice SAYLOR, concurring.

I respectfully disagree with the majority's invocation of res judicata and collateral estoppel in the present case. Both doctrines depend, to some extent, on identity of a party or parties to the prior litigation, whereas such identity appears to be lacking here. My thoughts are more closely in line of those of the majority in terms of its discussion of federalism and comity, albeit I would add that the appropriate application of these principles to a given federal mandate may depend on the subject matter and particular circumstances involved. Here, however, I find the federal court's rationale supporting its injunction to be fairly strong, and, in any event, I believe that impacted parties should be afforded judicial review in the federal courts, to the degree they might present a colorable challenge to an injunction imposed by the federal system.

---

**12.** We offer no opinion on the merits of the *Morrill* court's analysis of the First Amendment claim. Our decision today merely recognizes that because the *Morrill* judgment is final, it has preclusive effect, and the federal permanent injunction may not be undercut by decisions of our Commonwealth's courts or actions of the Secretary.

Should such access be denied, I would certainly be willing to reconsider the approach to which I accede here.

Justice BAER, concurring.

In this election challenge the Commonwealth Court applied Section 2911(d) of the Election Code, 25 P.S. § 2911(d), and ordered the Secretary of the Commonwealth (Secretary) to strike the name of Carl Stevenson (Stevenson) from the ballot notwithstanding that the Secretary had been enjoined from enforcing Section 2911(d) by a permanent injunction in *Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D.Pa.2002). Consequently, the Commonwealth Court order placed the Secretary in the untenable position of being subject to conflicting court orders in that he could not both comply with the *Morrill* permanent injunction and honor the Commonwealth Court's directive in this case to enforce Section 2911(d) by striking Stevenson from the ballot. Like Justice Saylor, I respectfully disagree with the Majority's invocation of res judicata and collateral estoppel because both doctrines depend on the identity of the parties in the prior litigation, which is lacking here. Rather, this case involves basic notions of comity between the federal and Pennsylvania court systems, as well as recognition of a state court's obligation to recognize the preclusive effect of a final federal judgment. Before elaborating on these points, I comment briefly on the propriety of deciding this undisputedly moot case.

Courts generally should not and will not address a moot case. The Majority invokes the exception to this general rule where "the issue presented is one of great public importance or is one that is capable of repetition yet evading review." *See* Maj. Op. at 62, 40 A.3d at 1219 (citing *Ass'n of Pennsylvania State College and Univ. Faculties v. PLRB*, 607 Pa. 461, 8 A.3d 300, 305 (2010); *Pap's A.M. v. City of Erie*, 571 Pa. 375, 812 A.2d 591, 600–01 (2002)).

I have no quarrel with this, but would be more specific. I agree that the question of the enforceability of Section 2911(d)'s residency requirement is a matter of substantial public importance, as are many other matters that this Court

in its discretion agrees to review. I do not, however, believe that this fact in and of itself would be enough to permit review of a moot case absent some paramount exigency. Rather, this case presents the classic capable of repetition yet evading review paradigm as exemplified by recognition that several unreviewed Commonwealth Court opinions have declared that courts of the Commonwealth are not bound by *Morrill*. *See In re Payton*, 945 A.2d 279 (Pa.Cmwlth.2008); *In re Nomination Paper of Rogers*, 908 A.2d 942 (Pa.Cmwlth.2006); *In re Petition for Agenda Initiative*, 821 A.2d 203 (Pa.Cmwlth. 2003). This is unsurprising as we often confront unrealistic if not impossible time constraints in election matters, which leave little time for deliberation. *See Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331 (1986) (applying the mootness exception because the question was capable of repetition yet evading review). Thus, the issue presented herein is the type for which all courts, including those within the federal system that are bound by the constitutional case or controversy requirement, have invoked the exception to the mootness doctrine. *See Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); *Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Western Pennsylvania Socialist Workers*, 515 A.2d at 1333; *Coatesville Dev't Co. v. United Food and Commercial Workers*, 374 Pa.Super. 330, 542 A.2d 1380 (1988).

Turning to the preclusive effect of *Morrill*, it is undisputed that the litigation in *Morrill*, in which the Secretary was a party, resulted in a final federal injunction permanently barring the Commonwealth from enforcing the residency requirement of Section 2911(d). The Commonwealth did not appeal and has abided by the injunction by not enforcing this statutory provision. Consequently, the only relevant question is the preclusive effect of this final federal judgment. Resolution turns on the comity or respect that one judicial system should show for the community of law, as well as the recognition of

final judgments rendered by a court system other than our own.

The majority answers the question by turning to the preclusive doctrines of res judicata and collateral estoppel. Res judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous litigation. *Wilkes v. Phoenix Home Life Mut. Ins. Co.*, 587 Pa. 590, 902 A.2d 366, 376 (2006); *R/S Financial Corp. v. Kovalchick*, 552 Pa. 584, 716 A.2d 1228, 1230 (1998).

The term has come to encompass the effect of one judgment upon a subsequent trial or proceeding, *Helmig v. Rockwell Mfg. Co.*, 389 Pa. 21, 131 A.2d 622 (1957), and is often used to refer both to res judicata itself and collateral estoppel. *See Taylor v. Sturgell*, 553 U.S. 880, 882, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"); *Clark v. Troutman*, 509 Pa. 336, 502 A.2d 137, 139 (1985) (" 'Res judicata' encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment."); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.1978) (describing the major variations in terminology). Application of the doctrine of res judicata requires the concurrence of four elements: identity of the thing sued for; identify of the cause of action; identity of persons and parties to the action; and identify of the quality or capacity in the persons for or against whom the claim is made. *City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh*, 522 Pa. 44, 559 A.2d 896 (1989).

Similarly, collateral estoppel, also known as issue preclusion, applies if the issue decided in the prior case is identical to the one presented in the later case; there was a final judgment on the merits; the party against whom the plea is asserted was a

party or in privity with a party in the prior case; the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and the determination in the prior proceeding was essential to the judgment. *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82 (1998); *Office of Disciplinary Counsel v. Duffield*, 537 Pa. 485, 644 A.2d 1186 (1994); *Folino v. Young*, 523 Pa. 532, 568 A.2d 171 (1990); *City of Pittsburgh*, 522 Pa. 44, 559 A.2d 896. Neither issue preclusion nor claim preclusion applies unless the party or a person privy to the party against whom preclusion is asserted had a full and fair opportunity to litigate the claim in the first action.

"It is a principle of general application in Anglo—American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). There are several exceptions to this rule, *see Taylor*, 553 U.S. at 884, 128 S.Ct. 2161, none of which are asserted herein. Rather, the U.S. Supreme Court's well established precedent regarding the propriety of nonparty preclusion demonstrates that "[t]he application of claim and issue preclusion to nonparties . . . runs up against the deep-rooted historic tradition that everyone should have his own day in court." *Taylor*, 553 U.S. at 892–93, 128 S.Ct. 2161 (internal quotation marks omitted) (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)); *see also Martin v. Wilks*, 490 U.S. 755, 761, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

As the Majority observes, this case is complicated by the fact that the Secretary, who is subject to the federal injunction in *Morrill*, is not a party to the election challenge in this case. Despite his nonparty status, the Secretary is subject to the Commonwealth Court order resulting from that challenge. In election matters such as this, which involve private parties, the Commonwealth is more than tangentially involved because to

effectuate the results of election challenges, the Secretary must act. Therefore, although res judicata binds neither the Objectors nor Stevenson, the Secretary is subject to the *Morrill* injunction; thus it is the Secretary who is placed in the untenable position in that he cannot comply with conflicting court orders.

Because neither of the parties to this litigation were parties or in privity with the parties in the prior litigation, we are not presented with a straightforward application of res judicata or collateral estoppel, and I would not invoke either doctrine to uphold the sanctity of the federal permanent injunction in this scenario.[1] Nevertheless, as a matter of deference and respect for the actions of courts of other jurisdictions, (*i.e.*, comity), I agree with the Majority that the Pennsylvania judicial system should recognize and be bound by the federal injunction issued in this matter. In this respect, I agree with Justice Saylor.[2]

Moreover, there is a clearly established rule that state courts must give full faith and credit to the proceedings of federal court. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth*, 755 F.2d 38, 43 (3rd Cir.1985) (citing Degnan, Ronan E., *Federalized Res Judicata* 85 Yale L.J. 741, 744 (1976); *see also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4468 (1981) ("It would be unthinkable to suggest that state courts should be free to disregard the judgments of federal courts. . . .")). The U.S. Supreme Court has consistently held "the judgments of the courts of the United States have invariably been recognized as upon the same footing, so far as concerns the obligation created by them, with domestic judgments of the States, whenever rendered and whenever sought to be enforced."

1. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth*, 755 F.2d 38 (3rd Cir.1985) is thus distinguishable on its facts because it involved the straightforward application of the doctrine of claim preclusion where PennDOT was a party to and therefore subject to a federal court consent decree and was also a party in the subsequent state court decision enjoining implementation of the consent decree.

2. Unlike Justice Saylor, I would not hold out hope for potential state intervention at a later date. To the extent one desires relief from the federal court's decision, I believe the only recourse is within the federal system.

*Embry v. Palmer,* 107 U.S. 3, 2 S.Ct. 25, 27 L.Ed. 346 (1883); *see also Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938) ("[W]here the judgment or decree of the federal court determines a right under a federal statute, that decision is final until reversed in an appellate court, or modified or set aside in the court of its rendition." (internal citations removed)); *Supreme Lodge, Knights of Pythias v. Meyer,* 265 U.S. 30, 33, 44 S.Ct. 432, 68 L.Ed. 885 (1924); *Hancock Nat'l Bank v. Farnum,* 176 U.S. 640, 20 S.Ct. 506, 44 L.Ed. 619 (1900).

As the Majority observes, the scope of a federal judgment is determined through application of federal common law where the federal court was not sitting in diversity. Maj. Op. at 68–69, 40 A.3d at 1223 (citing *Taylor,* 553 U.S. at 891, 128 S.Ct. 2161). Federal common law is binding because it defines the measure of the basic obligation to respect the judgment. *See Deposit Bank v. Frankfort,* 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276 (1903) (noting that it is well settled that "a right claimed under the Federal Constitution, finally adjudicated in the Federal courts, can never be taken away or impaired by state decisions."). *Morrill* finally decided the Secretary's basic obligation with respect to Section 2911(d)'s residency requirement. The Commonwealth Court is consequently without authority to direct the Secretary to contravene the preclusive effect of this final federal judgment. *See Yaracs v. Summit Academy,* 845 A.2d 203 (Pa.Cmwlth.Ct.2004) (trial court without authority to void an agreement that was incorporated into a federal consent order). For reasons of comity and the preclusive effect in state court of a federal judgment, I believe that any attack on the validity of *Morrill* must be resolved in federal court. *See Delaware Valley,* 755 F.2d at 41. I therefore concur that the district residency requirement in Section 2911(d) is unenforceable in Pennsylvania at this time.