IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doug McLinko, :
                    Petitioner :
                                     :
          v.                         : No. 1205 C.D. 2024
                                     : Argued: September 11, 2025
Commonwealth of Pennsylvania,        :
Department of State and Al Schmidt,  :
Secretary of State of the            :
Commonwealth of Pennsylvania,        :
in his Official Capacity (Office of  :
General Counsel),                    :
                    Respondents      :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge (P.)
          HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: October 20, 2025


Doug McLinko petitions for review of the September 4, 2024 Final Determination of the Governor's Office of General Counsel (OGC), which dismissed a verified statement of complaint form (Complaint) filed by McLinko against the Commonwealth of Pennsylvania, Department of State and Al Schmidt, Secretary of the Commonwealth of Pennsylvania, in his official capacity (together, Department). Also before the Court is McLinko's Application for Summary Relief (Application). Briefly, McLinko argues that the Department violated Title III of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 21081-21102, by issuing the "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security

Numbers for Voter Registration Applications" (Directive), because it does not direct that a match between a driver's license number (DLN) or Social Security number (SSN) provided by a voter registration applicant and the numbers in established government databases is required before the applicant is registered to vote. After review, the Court denies the Application and affirms the Final Determination because the Directive does not violate Title III of HAVA but accurately advises county election officials as to the voter registration requirements imposed by federal and Pennsylvania law.

## I. BACKGROUND

In 2018, the Department issued the Directive, which provides as follows:

> Pursuant to Section 1803(a) of [what is commonly called the Voter Registration Act], 25 Pa.C.S. § 1803(a), the following Directive is issued by the Department . . . to clarify and specify legal processes relating to HAVA-matching of [DLNs] (or [Pennsylvania Department of Transportation (PennDOT) identification] card numbers) and [SSNs] when voters submit new voter registration applications or an application to reactivate a cancelled record.
>
> **This Directive underscores that Pennsylvania and federal law are clear that voter registrations may *not* be rejected based solely on a non-match between the applicant's identifying numbers on their application and the comparison database numbers.**
>
> As stated in the Department['s] . . . August 9, 2006 *Alert Re: Driver's License and Social Security Data Comparison Processes Required by [HAVA]*, HAVA requires only the following:
>
> > (1) that all applications for new voter registration include a current and valid [Pennsylvania DLN], the last four digits of the applicant's [SSN], or a statement indicating that the applicant has neither a valid and current [Pennsylvania] driver's license or [SSN]; and

(2) that voter registration commissions compare the information provided by an applicant with [PennDOT's] driver's license database or the database of the Social Security Administration.

HAVA's data comparison process "was intended as an administrative safeguard for 'storing and managing the official list of registered voters,' and not as a restriction on voter eligibility." *Washington Ass'n of Churches v. Reed,* 492 F. Supp. 2d 1264, 1268 (W.D. Wash. 2006).

**Counties must ensure their procedures comply with state and federal law, which means that if there are no independent grounds to reject a voter registration application other than a nonmatch, the application may *not* be rejected and must be processed like all other applications.**

It is important to remember that any application placed in 'Pending' status while a county is doing follow-up with an applicant whose driver's license or last four of SSN could not be matched **MUST** be accepted, unless the county has identified another reason to decline the application. Leaving an application in Pending status due to a nonmatch is effectively the same as declining the application while denying the applicant access to the statutory administrative appeals process, and as described above is **not** permitted under state and federal law.

(Reproduced Record (R.R.) at 12a (emphasis in original).)

On June 12, 2024, pursuant to Section 1206.2 of the Pennsylvania Election Code (Election Code), 25 P.S. § 3046.2,[1] McLinko filed the Complaint against the Department, alleging that the Directive violates Section 303(a)(5) of HAVA, 52 U.S.C. § 21083(a)(5), because it "direct[s] all 67 county boards of election to ignore HAVA's verification mandate and to register *any* applicant to vote regardless of whether an applicant's [DLN] or [SSN] can be verified." (R.R. at 6a (emphasis in

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 11 of the Act of December 9, 2002, P.L. 1246, 25 P.S. § 3046.2. Section 1206.2 of the Election Code governs the "procedure for the review of complaints regarding the administration of Title III of [HAVA]," 25 P.S. § 3046.2, as required by Section 402 of HAVA, 52 U.S.C. § 21112 (requiring the establishment and maintenance of "State-based administrative complaint procedures").

original).) Upon receiving the Complaint, the Department forwarded it to the OGC in accordance with Section 1206.2(c)(1) of the Election Code. On July 2, 2024, the Department filed a written response to the Complaint pursuant to Section 1206.2(c)(2) of the Election Code, defending the legality of the Directive. The following day, by agreement of the parties, the OGC scheduled an informal hearing for July 24, 2024.

After conducting the informal hearing as scheduled, the OGC issued the Final Determination on September 4, 2024, dismissing the Complaint because McLinko did not establish the Department violated Title III of HAVA. The OGC found that McLinko "presented no evidence that the Department prohibits or interferes with the ability of counties to take steps to verify voter information, provided that counties do so in accordance with state and federal law." (Final Determination at 3.) In addition, the OGC opined that HAVA "merely requires that registrants submit a valid [DLN] or the last four digits of a [SSN], or be assigned a number by the state," and "nothing in [S]ection 303(a) of HAVA requires that the identity of a registrant to vote to be verified at the registration stage." (*Id*. at 5.) Thus, the OGC reasoned McLinko's "claim that HAVA requires a state to match a driver's license or the last four digits of a [SSN] is without foundation, given that the statute explicitly does not require an applicant to have either and provides an alternative" via a "special rule," which requires the state to assign an applicant number to those applicants without a DLN or SSN. (*Id.*) The OGC therefore concluded that the Directive complies with Title III of HAVA.

McLinko timely filed a Petition for Review of the Final Determination in this Court pursuant to Section 1206.2(f) of the Election Code, requesting that the Court reverse the Final Determination, declare the Directive violates HAVA and is thus

invalid, enjoin Secretary Schmidt and others from enforcing the Directive, and grant any other relief as is just and proper. Subsequently, McLinko filed the Application pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), arguing "his right to relief is clear and he is entitled to judgment as a matter of law" because "[Commonwealth] officials are violating HAVA if they are processing or accepting [voter registration] applications without determining if the [DLN] or last four digits of the [SSN] are valid" and "when they do not verify an applicant's [DLN] or the last four digits of a [SSN] against established databases." (Application at 5, 11 (emphasis removed).) On March 18, 2025, the Court ordered the Prothonotary to list the Application with the merits of the appeal and for McLinko and the Department to address their arguments for and against the Application in their appellate briefs. With briefing now complete, this matter is ripe for disposition.[2]

---

[2] The Court's "review of agency decisions 'is restricted to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence.'" *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.5 (Pa. Cmwlth. 2025) (citation omitted). "When considering pure questions of law, our standard of review is *de novo* and our scope of review is plenary." *Id.* (citation omitted). The instant case also invokes Pennsylvania Rule of Appellate Procedure 1532(b), which provides: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "Summary relief on a petition for review is similar to the relief provided by a grant of summary judgment." *Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017). Accordingly, in considering summary relief, the Court views the record "in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.* Therefore, the Court will grant summary relief only when the moving "party's right to judgment is clear and no material issues of fact are in dispute." *Cook v. Pa. Lab. Rels. Bd.*, 315 A.3d 885, 895 (Pa. Cmwlth. 2022) (citation omitted).

**II.    DISCUSSION**

   *A. Federal and Pennsylvania Voter Registration Laws*

Because McLinko's arguments concern the voter registration process, it is necessary to review the relevant federal and Pennsylvania voter registration laws before addressing those arguments.

In the wake of the 2000 presidential election, among other purposes, Congress enacted HAVA to "establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections."  Pub. L. No. 107-252, 116 Stat. 1666 (codified at 52 U.S.C. §§ 20901-21145).  Relevant here, as part of the minimum election administration standards, Section 303(a)(1) of HAVA requires states to implement and maintain a computerized statewide list of registered voters that "contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State."  52 U.S.C. § 21083(a)(1).  To ensure states compile accurate voter registration lists, Section 303(a)(5) of HAVA mandates the "[v]erification of voter registration information" as follows.  52 U.S.C. § 21083(a)(5).

To start, Section 303(a)(5)(A)(i) of HAVA requires voter registration applicants to provide certain identifying information:

> Except as provided in clause (ii), notwithstanding any other provision of law, an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes--
>
> > (I) in the case of an applicant who has been issued a current and valid driver's license, the applicant's [DLN]; or
> >
> > (II) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last 4 digits of the applicant's [SSN].

52 U.S.C. § 21083(a)(5)(A)(i). Thereafter, "[t]he State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii). To assist in this validity determination, HAVA further requires:

> The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration.

52 U.S.C. § 21083(a)(5)(B)(i). In turn, "[t]he official responsible for the State motor vehicle authority shall enter into an agreement with the Commissioner of Social Security." 52 U.S.C § 21083(a)(5)(B)(ii). "If an applicant for voter registration for an election for Federal office has not been issued a current and valid driver's license or a [SSN]," however, a "[s]pecial rule" requires that "the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes." 52 U.S.C. § 21083(a)(5)(A)(ii).

The Pennsylvania Voter Registration Act, 25 Pa.C.S. §§ 1101-1906, further governs voter registration in the Commonwealth. Pursuant to Section 1301, individuals may register to vote if certain criteria are satisfied. 25 Pa.C.S. § 1301. "Upon receiving a voter registration application," Section 1328(a)(2) requires the county voter registration commission to "[e]xamine the application to determine all of the following:

(i) Whether the application is complete.

(ii) Whether the applicant is a qualified elector.

7

(iii) Whether the applicant has an existing registration record. After the commission is connected to the [Statewide Uniform Registry of Electors (SURE system)[3]], the commissioner, clerk or registrar shall search the SURE system on a Statewide basis to determine if the applicant has an existing registration record.

(iv) Whether the applicant is entitled or qualified to receive the requested transfer or change, if applicable.

25 Pa.C.S. § 1328(a)(2). The voter registration commission must then decide whether to accept and process the application or reject it. 25 Pa.C.S. § 1328(b). Voter registration commissions may only reject an application for four reasons:

(i) The application was not properly completed and, after reasonable efforts by the commission to ascertain the necessary information, the application remains incomplete or inconsistent.

(ii) The applicant is not a qualified elector.

(iii) The applicant is not entitled to a transfer of registration or a change of address.

(iv) The applicant is not legally qualified for a change of name.

25 Pa.C.S. § 1328(b)(2)(i)-(iv). If the voter registration commission rejects an application, the commission must notify the applicant of the rejection, indicating the reasons for the rejection, "no later than ten days before the election succeeding the filing of the application." 25 Pa.C.S. § 1328(b). This notification allows the applicant to challenge the rejection in accordance with Section 1329 of the Voter Registration Act. 25 Pa.C.S. § 1328(e); *see also* 25 Pa.C.S. § 1329.

With these statutory provisions in mind, we turn to McLinko's arguments.

---

[3] Section 1222(a) of the Voter Registration Act, 25 Pa.C.S. § 1222(a), established the Statewide Uniform Registry of Electors, known as the SURE system, in compliance with Section 303(a)(1) of HAVA.

*B. Analysis*

McLinko argues he is entitled to summary relief because the Directive violates Title III of HAVA, no material facts are in dispute, and his right to relief is clear. Specifically, McLinko asserts Section 303(a)(5) of HAVA "requires state election officials to verify whether the [DLN] or last four digits of a [SSN] supplied by the applicant are valid *before* that applicant may be registered to vote." (McLinko's Brief (Br.) at 13 (emphasis in original).) According to McLinko, state election officials violate this provision if they accept or process a voter registration application with invalid or omitted DLNs and SSNs or do not establish the validity of those numbers if provided by the applicant. (*Id.* at 14-15.) McLinko thus posits that the Department violated HAVA because the Directive "commands local election officials" to accept voter registration applications without verifying if the applicant's DLN or SSN is valid. (*Id.* at 17.) McLinko further maintains that the "special rule" contained in Section 303(a)(5)(A)(ii) of HAVA does not render the Directive compliant with HAVA because the Directive was not "designed to further the [s]pecial [r]ule." (*Id.* at 19-20.) Similarly, McLinko claims that Section 303(a)(5)(A)(iii) of HAVA does not authorize the Department to circumvent the verification requirements of Section 303(a)(5) because that provision merely "goes to process" and does not permit state procedures to supersede substantive federal law. (*Id.* at 20.)

This Court's recent en banc decision in *PA Fair Elections v. Pennsylvania Department of State* is particularly instructive here because it also considered whether the Directive violated Section 305(a)(5) of HAVA. *See* 337 A.3d 598 (Pa. Cmwlth. 2025). In that case, petitioners argued the Directive violated Section 303(a)(5) of HAVA because it did not require election officials to match with

9

established databases the DLNs or SSNs of individuals applying to register and vote pursuant to the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. §§ 20301-23011, as the petitioners claimed HAVA mandates. *Id.* at 600-01. Quoting favorably the underlying OGC determination, the Court disagreed:

> Nothing in **Section 303(a) of HAVA** requires the verification obligation at the registration stage that [p]etitioners seek to impose on the Department. The plain text requires only that registrants submit their [DLN] or the last four digits of their [SSN]—it **does not require any further documentation or matching between name and number at this stage**. *See* 52 U.S.C. § 21083(a)(5)(A)(i). Any attempt to read a matching requirement into Section 303(a) of HAVA is belied by the "special rule" for those without a driver's license or [SSN], which requires only that the state "assign the applicant a number." *See* 52 U.S.C. § 21083(a)(5)(A)(ii). **If Congress intended to require states to use the information submitted at the registration stage for verification purposes**, it would have required every voter to submit some type of verifiable identification**. But **it did not**. Instead, **the purpose of Section 303(a) of HAVA is that it provides states with the tools to assemble a complete**, **accurate**, **and non-redundant list of registered voters**. *See Reed*, 492 F. Supp. 2d at 1268 (finding that Congress intended the Section 303(a) of HAVA list to be "an administrative safeguard for 'storing and managing the official list of registered voters,' and not as a restriction on voter eligibility"). The verification or matching obligation on which [p]etitioners base their claim is not in the statutory text and is ancillary to the statutory purpose.

*Id.* at 604 (emphasis in original; citation modified). This Court therefore affirmed the OGC, concluding that "[a] thorough review of the relevant HAVA provisions, as well as the relevant UOCAVA provision, makes it clear that the [OGC] properly determined that the Department's treatment of voters who apply to register and vote under the provisions of UOCAVA is consistent with HAVA." *Id.*

Here, the Court likewise concludes that the Directive does not violate Section 303(a) of HAVA because that provision does not require a match between the DLNs or SSNs provided by voter registration applicants and the numbers in established

government databases for that applicant to be registered to vote. *See id.* Instead, HAVA defers to state law on how the state verifies the DLNs and SSNs provided by an applicant: "The State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, **in accordance with State law**." 52 U.S.C. § 21083(a)(5)(A)(iii) (emphasis added). In accordance with the Voter Registration Act, voter registration commissions are not required to match the DLNs or SSNs provided by applicants with established databases to accept a voter registration application. *See* 25 Pa.C.S. § 1328. Although voter registration commissions must search the SURE system "to determine if the applicant has an existing registration record," a nonmatch or mismatch in the DLNs or SSNs provided by the applicant is not a valid reason to reject an application under the Voter Registration Act. *See* 25 Pa.C.S. § 1328(a)(2)(iii), (b)(2). And while the Department is required to enter into an agreement with PennDOT to facilitate the matching of information in the SURE system with PennDOT's database, this agreement is only necessary to provide voter registration commissions the ability "to verify the accuracy of the information provided on applications for voter registration" in accordance with the Voter Registration Act. *See* 52 U.S.C. § 21083(a)(5)(A)(iii), (B)(i). These requirements are simply to ensure "a complete, accurate, and non-redundant list of registered voters" and do not serve as constraints on voter registration. *See PA Fair Elections*, 337 A.3d at 604 (citation and emphasis omitted); *see also Reed*, 492 F. Supp. 2d at 1268 ("It is clear from the language of the statute and by looking at legislative history that HAVA's matching requirement was intended as an administrative safeguard for 'storing and managing the official

11

list of registered voters,' and not as a restriction on voter eligibility.").[4]   Indeed, "[a]ny attempt to read a matching requirement into Section 303(a) of HAVA is belied by the 'special rule' for those without a [DLN] or [SSN], which requires only that the state 'assign the applicant a number'" for purposes of compiling an accurate voter registration list. *PA Fair Elections*, 337 A.3d at 604 (citation modified); *see also* 52 U.S.C. § 21083(a)(5)(A)(ii).  Thus, the Directive, which advises that county election officials may not reject voter registration applications based only on a nonmatch between the DLNs or SSNs provided by applicants with those numbers in established databases, does not violate Section 303(a) of the HAVA.

Nevertheless, McLinko claims that three federal "[c]ourts interpreting Section 303(a) of HAVA have rightfully found that Congress intended that state official[s] [] verify an applicant's [DLN] or last four digits of his [SSN] before an application may be processed or accepted."  (McLinko's Br. at 18-19 (citing cases)).  However, these three federal cases are either distinguishable from the instant case because they involved a later stage in the voting process or, in fact, buttress the Court's above conclusion that Section 303(a) of HAVA defers to state law, which in this case does not permit voter registration commissions to reject an application based only on a nonmatch or mismatch in the DLNs or SSNs provided by the applicant with established databases. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 185, 192-93 (2008) (Stevens, J., announcing the judgment of the Court) (considering the constitutionality of an Indiana law requiring photo identification to vote in person and explaining that HAVA did **not** require Indiana to enact the law but merely

---

[4] "[T]he pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth—although we certainly are bound by the decisions of the U.S. Supreme Court on questions of federal law." *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012).

"contain[s] provisions consistent with a **State's choice** to use government-issued photo identification as a relevant source of information concerning a citizen's eligibility to vote" (emphasis added)); *Fla. State Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Browning*, 522 F.3d 1153, 1155, 1174 & n.21 (11th Cir. 2008) (holding Section 303(a) of HAVA did not preempt a Florida law because while Section 303(a) of HAVA "indicates that Congress deemed the identification numbers material to determining eligibility to register and to vote," it "also does **not** require that states authenticate these numbers by matching them against existing databases" and "is explicit that **states are to make determinations of validity in accordance with state law**" (emphasis added)); *Ohio Republican Party v. Brunner*, 582 F. Supp. 2d 957, 966 (S.D. Ohio) (considering whether "HAVA requires matching and verification **prior to counting absentee ballots** of new registrants," but expressly declining to "consider whether HAVA requires real time matching and verification **at the time of registration**" (emphasis added)), *aff'd*, 544 F.3d 711 (6th Cir.), *vacated*, 555 U.S. 5 (2008).

## III. CONCLUSION

In summary, the Directive accurately advises county election officials as to the requirements of Section 303(a) of HAVA and the Voter Registration Act. Therefore, the Application is denied because McLinko's right to judgment is not clear. Moreover, the Final Determination is affirmed because the Directive does not violate Section 303(a) of HAVA.

_____
RENÉE COHN JUBELIRER, President Judge

Judge Wallace did not participate in the decision in this case.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doug McLinko,                           :
                    Petitioner          :
                                        :
            v.                          :     No. 1205 C.D. 2024
                                        :
Commonwealth of Pennsylvania,           :
Department of State and Al Schmidt,     :
Secretary of State of the               :
Commonwealth of Pennsylvania,           :
in his Official Capacity (Office of     :
General Counsel),                       :
                    Respondents         :

# **O R D E R**

**NOW**, October 20, 2025, Doug McLinko's December 20, 2024 Application for Summary Relief is **DENIED**, and the September 4, 2024 Final Determination of the Governor's Office of General Counsel is **AFFIRMED**.

                                                    _____
                                                    RENÉE COHN JUBELIRER, President Judge